EDITH BROWN CLEMENT, Circuit Judge, with EDITH H. JONES, Chief Judge, and JERRY E. SMITH and JENNIFER WALKER ELROD, Circuit Judges,
concurring in part and dissenting in part:
I join the Chief Judge’s dissent because I believe the Party Expenditure Provision *451 cannot be constitutionally applied to the Cao ad. I write separately to note that I would go further than the Chief Judge in fashioning a standard that protects political speech that is not the functional equivalent of a campaign contribution.
The Chief Judge and I agree on much. We agree that this as-applied challenge is not, as the majority erroneously assumes, foreclosed by Federal Election Commission v. Colorado Republican Campaign Committee, 533 U.S. 431, 121 S.Ct. 2351, 150 L.Ed.2d 461 (2001) (“Colorado IF). We also agree that the court’s task is to fashion a standard for determining whether a coordinated expenditure is the functional equivalent of a contribution, and that Federal Election Commission v. Wisconsin Right to Life, Inc., 551 U.S. 449, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007) (“WRTL”), provides guidance about what that standard ought to look like. We agree that coordination merely as to timing does not make the Cao ad the functional equivalent of a contribution and that the ad is accordingly protected by strict scrutiny. Finally, we agree that the government’s asserted interest in banning this ad does not survive such scrutiny.
However, I see no reason that timing alone makes any difference in the constitutional analysis, and question whether a de minimis standard provides a line bright enough to avoid chilling protected speech through the threat of an enforcement action. The Supreme Court has drawn the relevant distinction between an expenditure and a contribution: a contribution “serves as a general expression of support for the candidate and his views,” while an expenditure “eommunicate[s] the underlying basis for the support.” Buckley v. Valeo, 424 U.S. 1, 21, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The Court has also identified the goal of the anti-coordination rules: preventing circumvention of the contribution limits by expenditures that amount to simply paying a candidate’s bills. See Buckley, 424 U.S. at 47 n. 53, 96 S.Ct. 612 (noting that an expenditure is not coordinated if it is “incurred without the request or consent of a candidate or his agent”) (citing H.R. Rep. No. 93-1239 at 6 (1974)); see also Colorado II, 533 U.S. at 457-60, 121 S.Ct. 2351 (describing circumvention); Colo. Republican Campaign Comm. v. Fed. Election Comm’n, 518 U.S. 604, 624, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996) (“Colorado I”) (describing expenditures that are “virtually indistinguishable from simple contributions”). A “timing only” standard does nothing to capture the difference between these two constitutionally distinct forms of communication. The same could be said of other standards based on the manner of coordination, such as medium (radio versus television); venue (the local Spanish-language channel versus the soft rock channel); or region (the Lower Ninth Ward versus Uptown New Orleans).
Likewise, a de minimis standard is difficult to apply and interpret. The FEC would be required to develop extensive regulations drawing lines between de min-imis and prohibited coordination. Courts attempting to adjudicate the application of these regulations to specific factual situations would find themselves drawn into similar hair splitting. Litigants would be forced to respond to extensive discovery on the substance of their contacts with the candidate. A speaker contemplating engaging in speech such as the Cao ad would face a “burdensome, expert-driven inquiry, with an indeterminate result.” WRTL, 551 U.S. at 469, 127 S.Ct. 2652. Despite the best intentions of such a standard, “it will unquestionably chill a substantial amount of political speech.” Id.
What does make a difference in the constitutional analysis, however, is coordina *452 tion as to the content of the ad. The Cao ad is the RNC’s own speech, expressing its views on political issues, and identifying Cao as a candidate who supports those views. Cao did not provide input on its content and was not asked to provide his consent to run the ad. If he had, that would indeed raise a suspicion that the parties were attempting to circumvent the rules against coordination so that the RNC could pay the bill for Cao’s speech — the evil at which the coordination rules are aimed.[1]
Accordingly, I would propose a two-pronged standard that is “content-driven,” rather than one that turns on the degree of coordination. Specifically, I would propose the following: An advertisement is functionally identical to a contribution only if it is susceptible of no other reasonable interpretation than as a general expression of support for the candidate, and the ad was not generated by the candidate. Under this standard, the speaker could only take refuge in the safe harbor of a content-driven standard if the speech conveys the underlying basis of the support, and was not merely adopted speech indistinguishable from paying a candidate’s advertising bills. This approach shares all the characteristics of the standard the Court adopted in WRTL: it is clear, objective, and content-driven, and because it is relatively simple for both speakers and regulators to understand and apply, will not chill speech through the threat of litigation. It limits discovery to a factual issue that is relatively easy to ascertain, ie., whether the ad was generated by or its content approved by the candidate or the political party. It references the fundamental distinction the Court drew between contributions and expenditures in Buckley, and exempts from its protection expenditures that amount to a party merely paying a candidate’s bills. The standard would also align more closely than other possible standards with the actual definition of a coordinated expenditure, which prohibits spending “at the request or suggestion of, a candidate.” 2 U.S.C. § 441a(a)(7)(B)(I) (emphasis added).
Applying this standard, the Cao ad is not functionally identical to a campaign contribution. The ad was generated by the RNC. It expresses not merely the kind of generalized sentiment — “Vote for Joseph Cao”' — that the Court has described as the hallmark of a contribution, but expresses the RNC’s view on important matters of public concern and urges a vote for Cao because he shares the same views. While the “takeaway” message of this advertisement may be one urging support for Cao, the message is anchored and inspired not by the RNC’s support for Cao, but by Cao’s support for the views expressed by the RNC. The ad thus communicates the underlying basis for the support, making it more like an expenditure protected by strict scrutiny. This is far from the archetypal coordination de *453 scribed in Buckley, effectively paying a candidate’s advertising bills. The Cao ad can reasonably be interpreted as something other than a general expression of support for a candidate and was not generated by Cao, and as such, strict scrutiny should apply to laws regulating this ad.
Most importantly, this standard is faithful to what I take to be the central lesson of WRTL: that “[w]here the First Amendment is implicated, the tie goes to the speaker, not the censor.” 551 U.S. at 474, 127 S.Ct. 2652. Like the advertisements in WRTL, the Cao ad is indisputably political expression, one that in any other context would merit the highest degree of protection. See Buckley, 424 U.S. at 48, 96 S.Ct. 612 (“[T]he First Amendment right to ‘speak one’s mind ... on all public institutions’ includes the right to engage in ‘vigorous advocacy’ no less than ‘abstract discussion.’ Advocacy of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of political policy generally or advocacy of the passage or defeat of legislation.”) (quotations omitted) (ellipsis in original). The Court has emphasized that political parties have the First Amendment right to speak on political issues and explicitly acknowledged that coordinated expenditures “share some of the constitutionally relevant features of independent expenditures.” Colorado I, 518 U.S. at 624, 116 S.Ct. 2309. Speech that articulates a set of political views and explains the speaker’s support of a candidate in terms of that candidate’s endorsement of those views — ie., speech that conveys the underlying basis of support — is speech that implicates the strongest and most compelling First Amendment interests.
In any case dealing with campaign finance law it is easy to mystify oneself— and one’s audience — with talk of “coordination,” “circumvention,” “functional equivalent,” and the like. These bland phrases mask the import of the absolutist position the majority has taken today. The standard I have proposed makes distinctions and is consistent with the Court’s often difficult precedents in this area, but it proceeds from a fairly simple impulse: If the First Amendment means anything, it means that political speech is not the same thing as paying a candidate’s bills for travel, or salaries, or for hamburgers and balloons. In this case, a group of citizens has banded together to express their views on important public matters. Congress has abridged their freedom to do so. This the Constitution does not permit. I respectfully dissent.

. The majority argues that what it calls "timing-plus-content-awareness coordination'' raises “exactly” the same circumvention concerns as if Cao had provided input on the content of the ad or given his permission for the ad to run. Maj. Op. at 432-33. This is not the case. Once again, the majority refuses to analyze this ad along the lines the Court demands: whether it is merely a general expression of support for the candidate versus one that communicates the underlying basis for the support. Buckley, 424 U.S. at 21, 96 S.Ct. 612. Such analysis distinguishes the Cao ad from a communication generated by Cao that the RNC pays to have broadcast. Furthermore, the majority's approach is precisely that rejected by the Court in WRTL: the "prophylaxis-upon-prophylaxis” approach of banning protected speech because that makes it easier to ban unprotected speech. 551 U.S. at 479, 127 S.Ct. 2652. To quote the Court: "Enough is enough.” Id. at 478, 127 S.Ct. 2652.